**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARMANDO GUTIERREZ, K57497, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | Case No. 23-cv-2651-DWD |
| MOHAMMED SIDDIQUI, ) | |
| MICHAEL MOLDENHAUER, ) | |
| MARY ZIMMER, ) | |
| ALISA DEARMOND, ) | |
| ANGELA CRAIN, ) | |
| ANGIE WALTER, ) | |
| DR. STEPHEN RITZ, ) | |
| NICOLE MARSHALL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Armando Gutierrez, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's lawsuit concerns medical care for an undiagnosed urethral stricture and a mass in his abdomen. Defendants moved for summary judgment (Docs. 117, 130) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff timely responded (Doc. 143), and Defendants have replied (Docs. 152, 153). For reasons explained, Defendants' Motions are denied.

## BACKGROUND

Plaintiff initiated this lawsuit by filing a Complaint on August 1, 2023.  (Doc. 1). Upon initial review, the Court designated four claims to proceed concerning Plaintiff's alleged lack of treatment that spanned 16 years, and by separate order, the Court appointed counsel to assist Plaintiff in managing the case.  (Docs. 10, 12).  After a lengthy process to identify the John/Jane Doe defendants named in the original complaint, on November 1, 2024, the Court granted Plaintiff's Motion to Amend, added the newly identified parties, and directed service of the complaint.  (Doc. 67).  Ultimately, counsel filed two additional amended complaints to narrow and refine the claims.  (Docs. 122, 133).  The claims as designated by the Court, and refined by the parties are:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Moldenhauer, Ritz, Zimmer, Siddiqui, Dearmond, and Wexford for their handling of Plaintiff's medical condition from 2014-2021;**

**Claim 2:** **Eighth Amendment failure to intervene claim against Defendants Moldenhauer, Ritz, Zimmer, Siddiqui, Dearmond, and Wexford for their actions from 2014-2021;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Crain, Walter, and Brand for their role in helping Plaintiff to secure needed care from 2014-2021;**

**Claim 4:** **Eighth Amendment failure to intervene claim against Defendants Crain, Walter, and Brand for their actions from 2014-2021;**

**Claim 5:** **State law medical negligence claim against Moldenhauer, Ritz, Zimmer, Siddiqui, and Dearmond;**

**Claim 6:** **State law medical negligence claim against Crain, Walter, and Brand.**

(Docs. 67, 122, 133).  The Wexford Defendants are Moldenhauer, Dearmond, Zimmer, Ritz, and Siddiqui.  The IDOC Defendants are Crain, Walter, and Brand.

The Third Amended Complaint alleges that Plaintiff began experiencing recurrent kidney stones and blood and pain while urinating in or around 2006.  In 2007, Plaintiff arrived at Menard where he began to lodge sick call slips for treatment related to these issues.  (Doc. 133 at ¶¶ 17-18).  In September of 2014, Plaintiff saw Defendant Moldenhauer about his persistent issue and Moldenhauer consulted a supervising doctor who in turn consulted Defendant Dr. Stephen Ritz via the collegial review process.  (*Id.* at ¶¶ 19-20).  Dr. Ritz denied a referral to a urologist and instead directed an ultrasound. (*Id.* at ¶ 20).  The ultrasound did not reveal anything, and no further diagnostic measures were provided.  (*Id.* at ¶¶ 21-22).  Plaintiff saw Moldenhauer again for this continuing issue in September of 2016, at which point Moldenhauer's only advice was that Plaintiff should stop masturbating to alleviate the problem.  (*Id.* at ¶ 23(b)).  A grievance response not at issue in the present order indicated that Plaintiff saw Moldenhauer as recently as February of 2022 for post-surgical care.  (Doc. 118-1 at 81).

In September of 2016, Plaintiff also saw Defendant Brand and sought care for blood in his urine.  (*Id.* at ¶ 23(a)).  Around May 9, 2018, Plaintiff saw Defendant Zimmer for blood and pain while urinating.  (*Id.* at ¶ 23(d)).  On April 17 and 30, 2019, Plaintiff reported blood and pain while urinating to Defendant Zimmer.  (*Id.* at ¶¶ 23(h-i)).  He faults Moldenhauer and Ritz for proceeding with an ineffective course of care and never sending him for further diagnostic imaging or a urology visit.  (*Id.* at ¶ 24).  Plaintiff alleges that the only form of treatment he received in response to his numerous requests

for care was a prescription for a prostate medication at some point in 2018, which masked his symptoms. (*Id.* at ¶ 25).

In early February of 2021, Plaintiff was seen by Defendants Siddiqui and Dearmond. Siddiqui relayed that Plaintiff's urinalysis revealed abnormal results, and he conducted follow-up examinations in April and May of 2021, but did nothing other than continue "urine retention medication." (Doc. 133 at ¶ 26). On July 7, 2021, Plaintiff saw a non-party doctor who referred him for an immediate urological consultation. (*Id.* at ¶ 27). It was ultimately discovered that Plaintiff had a urethral stricture and an abdominal mesenteric mass, which required surgical removal and repair. (*Id.* at ¶ 28).

In the Third Amended Complaint, Plaintiff alleges that Wexford had actual knowledge of the pain and bleeding he was experiencing with urination, but Wexford did not take steps to treat his situation. (Doc. 133 at ¶ 34). He alleges Wexford failed to refer him to a specialist, continued an ineffective course of medication, approved easier care that was not adequate in dereliction of professional judgment, and refused timely consultations and follow-up care. (*Id.* at ¶ 35). He further alleges Wexford's actions were part of established policies, customs or practices to deny or delay appropriate diagnostic care, to deny or delay appointments with doctors in favor of nursing staff, to deny or delay referrals to outside specialists, and to provide inadequate care to inmates. (*Id.* at ¶ 36). Plaintiff alleges the Wexford Defendants' actions caused him unnecessary pain and suffering and left him to languish with an undiagnosed stricture and mass. (*Id.* at ¶ 37).

Concerning exhaustion, the parties identify a handful of relevant grievances but ultimately center their entire analysis on grievance 18-2-22.

**FINDINGS OF FACT**

Grievance 18-2-22 was filed on January 16, 2022,[1] concerning Plaintiff's desire for medical care.  Plaintiff marked the grievance an emergency, and on February 3, 2022, the Warden agreed and expedited the grievance for emergency processing.  (Doc. 118-1 at 77).  In the grievance, Plaintiff alleged

> Wexford has a policy to deliberately understaff its healthcare unit and as a result of these understaffings I was seen by nurse practitioners when I should have been seen by a doctor and sent out to be examined by a specialist but Wexford has maintained this policy of understaffing to save money and this policy has resulted in me being deliberately denied access to adequate medical care since at least 2006 when I was diagnosed as having kidney stones.  I passed the kidney stones and it's a known fact that when stones are passed they can tear at the inside of the urinary tract and when I complained of having blood in my urine after the stones had passed Wexford refused to send me out to be examined by a urologist or to be seen by a specialist.  This [] procedure was repeated by the other Wexford doctors and nurse practitioners that have seen me from 2006 up until now.  This policy to save money by giving me and other inmates the least expensive course of treatment or care for our serious med needs is what was used to deny me access to adequate medical care for the past 15 years.  I was finally sent out to be seen by a urologist in 2021 and it was discovered that I had scar tissue in my urinary tract from the passing of the kidney stones.  The blood that I was passing when I urinated was a clear sign of a problem that required a specialist to see me for it but because of the policies by Wexford to save money I was never sent out and the state IDOC who has an obligation to provide me with the basic necessities of life which includes medical care has hired Wexford to provide me and all inmates in custody with medical care and have been put on notice that since at least 2010 they have not been doing the job they were paid/hired to perform (Lippert v. Baldwin) per the class action lawsuit which I am a plaintiff in but instead of severing ties with Wexford or making them stop these policies, the State of Illinois (Governor Pritzker) and other policy makers such as the Director Jeffreys and the IDOC Medical Director have turned a blind eye to the inadequate medical care that is being provided to me and all inmates in IDOC for 15 years or so I was denied adequate medical care

---

[1] Plaintiff and the Wexford Defendants do not dispute that Plaintiff lodged grievance 18-2-22 on January 16, 2022, when he signed and dated it, but the IDOC Defendants dispute this date in their reply brief. Ultimately this factual dispute does not drive the outcome in this Order, so the dispute is immaterial.

for blood in my urine and then in 2021 I had to get surgery on my urinary tract to clear it of the scar tissue. This caused me to have an enlarged prostate and have to be put on Flomax a medication for prostate problems. I was losing weight, had serious pain when I urinated, headaches and constipation. I became severely depressed and believed that I was dying from cancer of the prostate. When I went out for the surgery the doctor (specialist) did several tests which revealed a mass in my stomach (tumor). Had I not been sent out to be seen by this specialist they would never have found this mass and if I would have been sent out sooner the mass would have been discovered sooner along with the reason why I was urinating blood off and on for 15 years. This problem was brought to the attention of the Wexford, Menard Administration Staff and IDOC and the Attorney Generals Office when I filed letters, grievances and a lawsuit Gutierrez v. Cotton et al 18-1440[2]. This is an emergency grievance due to the substantial risk of imminent personal injury and other serious irreparable harm to self due to the tumor that is still inside my stomach.

(Doc. 118-1 at 77-78).

As relief, Plaintiff sought "to continue to be seen by a specialist and whoever else I need to be seen by for my serious medical issues and to be kept informed about what's going on and I want one million dollars for pain and suffering for being denied medical care." (Doc. 118-1 at 77). On March 15, 2022, healthcare administrator Angela Crain indicated to the grievance officer that the allegations concern the last 15 years, and do not reference a discrete incident within the last 60 days. (Doc. 118-1 at 76). The grievance officer recommended denial of the grievance because it did not grieve a specific issue within the last 60 days. (*Id.*). The Warden concurred (*Id.*), and the Administrative Review

---

[2] A review of Court records indicates that Plaintiff initiated one lawsuit in 2018 — *Gutierrez v. Baldwin*, 18-cv-1478, concerning discipline and conditions of confinement. The case was ultimately severed into two separate cases because part of the complaint dealt with Menard, and part dealt with Pontiac Correctional Center. Case *Gutierrez v. Cotton* — 18-cv-2160 — was transferred to the Central District of Illinois and solely concerned conditions of confinement at Pontiac. It does not appear that either case was relevant to Plaintiff's medical situation.

Board (ARB) agreed indicating that the body of the grievance must specify wrong-doing within the 60-day timeframe (Doc. 118-1 at 75).

In addition to grievance 18-2-22, the Wexford Defendants submitted countless additional grievance records dating as far back as 2006 (Docs. 118-1, 118-2, 118-3), Plaintiff's cumulative counseling summary from March of 2019 to January of 2024 (Doc. 118-4), and a three-page excerpt of medical records demonstrating that in May of 2021 and August of 2021 Drs. Siddiqui and Ritz considered Plaintiff in collegial review for a urology consult and then a CT-scan, and both were approved. (Doc. 118-5). The IDOC Defendants submitted similar records (Docs. 131-1, 131-2, 131-6), with the addition of, internal Menard grievance logs for 2019-2022 (Doc. 131-4), a declaration from counselor Sara Quick (Doc. 131-5), a declaration from ARB member Ryan Nothnagle (Doc. 131-3).

Additionally, Plaintiff submitted his own declaration. Plaintiff states that over the years he inquired about the pain with urination but was informed it was a prostate issue. (Gutierrez Decl., Doc. 143-1 at ¶¶ 1-2). He trusted the advice he was given, though he desired further diagnostic imaging and tests. (*Id.* ¶ 3). Plaintiff does not recall the exact dates of diagnostic imaging, and eventual surgery to repair his urethral stricture. (*Id.* ¶ 8). Plaintiff alleges that while in the prison hospital, he asked for grievance materials, but his requests were denied. (*Id.* at ¶ 11). He remained in the prison hospital for a few weeks, and at least for the first week he did not have a pen or paper. (*Id.* at ¶¶ 10, 12).

CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact. *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing."). If there are contested factual issues about exhaustion, a district court holds a hearing, and the judge resolves disputes on facts, including witness credibility. However, in *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (June 18, 2025), the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." In *Perttu* an inmate alleged that a guard sexually abused him,

and that the same guard destroyed his grievances and threatened to kill him if he filed additional grievances. After an evidentiary hearing, a judge concluded that the inmate's witnesses were not credible on the issue of destroyed grievances, and thus the case was dismissed for failure to exhaust. *Id.* at 1799. The *Perttu* Court held that because facts pertaining to exhaustion were also facts that went to the merits of the claim, the exhaustion issue should have been resolved by a jury, and not a judge. The *Perttu* Court noted that an affirmative defense concerning the statute of limitations is the sort commonly deferred for trial. *Id.* at 1801. The *Perttu* Court did not extend the right to a jury trial on exhaustion beyond the bounds of exhaustion issues intertwined with the merits of the substantive claims.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An "available" remedy is one that is "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) *citing Ross v. Blake*, 578 U.S. 632, 642 (2016). The Illinois Administrative Code requires an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must

include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Wexford Defendants seek summary judgment (Docs. 117, 118) for Plaintiff's failure to exhaust the claims against them. First, the Wexford Defendants argue, without citing anything other than IDOC's grievance rules, that Plaintiff's grievance cannot exhaust the claims against them because the grievance was not filed within 60 days of treatment that they provided. They baldly assert that Plaintiff cannot rely on a continuing violation theory to justify his early 2022 filing of his grievance because the focus of this

lawsuit is his desire for outside treatment of his urethral stricture, treatment which

Wexford provided a referral for on May 17, 2021.  They also argue as to individual

providers that Plaintiff was not seen by any of the individual providers within 60 days of

the grievance, and Dr. Siddiqui left employment at the prison in August of 2021, more

than 60 days prior to the grievance.

Plaintiff argues that the 60-day filing timeline from IDOC's grievance process does

not apply to his situation because grievance 18-2-22 concerned a continuing violation.  He

also argues that he did not know of the extent of his medical issue until a provider

informed him during a hospitalization from November 16, 2021-November 18, 2021, that

he had a severe stricture that should have been detected earlier.[3]  He contends that he

filed his grievance within 60 days of these dates, and that even if the grievance was

considered too late, he experienced delays due to lack of access to grievance materials, or

that any slight delay should be considered excused for good cause due to his post-surgical

pain.  Plaintiff also argues that with the limited medical records that have been produced

during initial discovery, the parties have not yet established a clear date when Plaintiff

knew of his issue or when treatment definitively began.  In this regard, Plaintiff argues

that the exhaustion disputes are intertwined with the merits of his claim and thus the

issue should be deferred under *Perttu.*  None of Plaintiff's arguments single out

individual defendants or Wexford for individual analysis.

---

[3] It appears from the records at issue concerning exhaustion that the November 16-18, 2021, hospital stay
concerned the mass in Plaintiff's abdomen (Doc. 118-5 at 3), and that the cystoscopy procedure to address
his urethral stricture occurred on November 30, 2021 (Doc. 118-1 at 80-81).

In reply, the Wexford Defendants quibble about the exact date when Plaintiff "discovered" his issue, and thus when the 60-day clock for filing a grievance began to run. They chronicle Plaintiff's work-up beginning in April of 2021 with imaging directed by Dearmond and Siddiqui, highlighting that in August of 2021 an outside provider explained to Plaintiff that further detailed diagnostics would be performed, and that on October 21, 2021, Plaintiff underwent further diagnostic imaging. The Wexford Defendants contend that Plaintiff is incorrect to argue he did not have a reason to file a grievance until November 16, 2021, or later, instead arguing he should have filed 60 days from the August or October 2021 appointments with outside providers. They also repeat their argument, without citing any cases other than *Turley*, that Plaintiff's situation did not constitute a continuing violation.

The IDOC Defendants made no argument in their summary judgment motion about the 60-day timeframe to file a grievance. However, in their reply brief they admit that Plaintiff filed grievance 18-2-22 within 60 days of his surgery and hospital stay from November 16-18, 2021, but contend the grievance was defective because it did not internally specify a date of incident in the body of the grievance within the previous 60 days. As to the argument on a continuing violation, the IDOC Defendants argue that Plaintiff's case can be contrasted from the cases he cited concerning continuing violations because in those cases the grievances at least provided discrete dates of treatment and were processed on the merits by the grievance system. The IDOC Defendants contend in reply that Plaintiff's grievance 18-2-22 was simply too vague to exhaust any claims under the theory of a continuing violation.

The exhaustion dispute in this case remains problematic for at least two reasons. First, the 60-day grievance filing deadline in 20 ILL. ADMIN. CODE § 504.810(a) is factually disputed.  The parties do not agree on the date(s) significant for the claims in this case. Plaintiff argues that the operative date is November 16, 2022, or alternatively, that he has not yet been provided with the medical records that would be needed to determine this date with greater precision.  The Wexford Defendants ultimately suggest three different dates between their initial motion and their reply.  The IDOC Defendants do not argue at all about the date significant for exhaustion in this case, and instead concede that grievance 18-2-22 was properly filed within 60 days, but that the grievance suffered from a technical defect because it did not explicitly state a discrete date within the body text. Like Plaintiff, the Court only has access to a limited subset of medical records and cannot determine at this early juncture which date or dates are the operative dates for purposes of the 60-day filing deadline.

Second, the parties contest the legal effect of the 60-day deadline in 20 ILL. ADMIN. CODE § 504.810(a).  The Wexford Defendants argue that Plaintiff's situation does not constitute a continuing violation, and that his failure to file a grievance within 60 days of treatment with any of the Wexford defendants means he failed to exhaust his claims.  The IDOC Defendants argue that grievance 18-2-22 did not contain sufficient factual allegations to notify the prison that he was complaining of a continuing issue, or to implicate Crain, Walter, or Brand in an alleged ongoing wrong.  The IDOC Defendants also argue that *Perttu* is not applicable to this case because *Perttu* relates to interference with the grievance process by named defendants, and Plaintiff does not contend that

Crain, Walter, or Brand interfered with his access to the grievance process.  By contrast, Plaintiff argues that the 60-day grievance filing rule is not applicable to his situation because he experienced an ongoing wrong, unified by Wexford policies, that did not end until he received treatment.

The continuing violation theory, as it applies to the PLRA exhaustion requirement, is an area of law that is ever evolving.  Though the parties discussed the most prominent case, *Turley v. Rednour,* 729 F.3d 645 (7th Cir. 2013), they did not engage with *Barrow v. Wexford Health Sources, Inc.*, 793 Fed. App'x 420 (7th Cir. 2019), and they could not have engaged with *Boyce v. Cox,* 2026 WL 741532 (7th Cir. Mar. 17, 2026) because it was just issued this month.  At a minimum, the exhaustion dispute in this case would benefit from more thorough briefing by the parties on *Barrow, Boyce*, and other relevant decisions by lower courts.  *Turley* concerned a prison wide policy about conditions of confinement, but *Barrow* and *Boyce* are more relevant because they deal with continuing violation issues surrounding deliberate indifference to medical care.  Furthermore, the problem is potentially bigger than the legal impact of relevant precedent.  In this case, a determination on the applicability of the continuing violation theory for PLRA exhaustion purposes may also overlap with other significant issues, like the statute of limitations.  Under *Perttu*, this sort of overlap might require that the dispute be resolved by a jury.

Given the factual and legal disputes in this case, the Court finds it appropriate to deny the Defendants' motions for summary judgment without prejudice.  This Memorandum and Order should be construed very narrowly and is not intended to be

interpreted as instructive on the issues of intertwinement or continuing violations for purposes of exhaustion. The Court is not finding definitively at this juncture that *Perttu* is implicated. Instead, the Court is merely finding that the factual and legal arguments are so uniquely underdeveloped that it is necessary to allow the parties more time to develop these issues before a decision can be rendered. To facilitate this process, the Court will open full merits discovery.

### DISPOSITION

Defendants' Motions for Summary Judgment (Docs. 117, 130) on the issue of exhaustion of administrative remedies are **DENIED** without prejudice. A merits discovery schedule shall follow.

**IT IS SO ORDERED.**

Dated: March 30, 2026

/s/ *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge